IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MICHAEL WOODS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 12 C 1900 |
| CITY OF BERWYN and RONALD HAMILTON, | ) ) ) ) |
| Defendants. | ) |

**REVISED**
**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

John Woods has sued the City of Berwyn, challenging his termination as a Berwyn firefighter. Woods asserts five claims against the city. He alleges that in terminating him, Berwyn violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626; the Fourteenth Amendment's Due Process Clause; and the Illinois Worker's Compensation Act, 820 ILCS 305/5. Woods has also asserted claims against Ronald Hamilton for defamation and intentional interference with contract.

Berwyn has moved for summary judgment on Woods's claims against it. Hamilton has not moved for summary judgment. For the following reasons, the Court grants Berwyn's motion.

**Background**

Until August 2011, Woods was a lieutenant in the Berwyn Fire Department. He

began working there in 1988.  He achieved the rank of engineer in 2006 and the rank of lieutenant in 2008.  He was also a member of Berwyn Firefighters Association Local 506, the collective bargaining agent for Berwyn firefighters, and his employment was subject to a collective bargaining agreement between the union and Berwyn.

At the time of his termination, Woods was fifty-four years old.  During his tenure with the Department, he filed three workers' compensation claims, in 2003, 2007, and 2010.  He also filed two requests for leave under the FMLA, in 2009 and 2010.

In February 2009, Woods's supervisor, Fire Chief Denis O'Halloran, suspended Woods without pay for twenty-four hours.  The parties dispute what actually happened to prompt the suspension.  The disciplinary action document that O'Halloran issued to Woods said that he was being disciplined for being insubordinate to a superior officer and threatening a subordinate employee.  Later that month, following the incident that resulted in Woods's suspension, Woods sought psychiatric treatment from a doctor, and he informed O'Halloran of the visit.

Woods says he "began facing significant animosity on the job" after filing his FMLA and workers' compensation claims in 2003, 2007, 2009, and 2010, Pl.'s Mem. at 4, though he does not cite anything specific before 2009.  He contends that the incident that gave rise to his 2009 suspension was actually an attack on him by another firefighter.  Woods cites other unpleasant interactions with Department staff, including a time in 2010 when O'Halloran and Assistant Chief Frank Simek asked him not to maintain a worker's compensation claim.  That same year, Department employees exchanged e-mails that made light of Woods's medical complaints, characterizing his complaints as "moaning," Pl.'s Ex. MM, and speculating that his license plate says

2

"Dumbbell." Pl.'s Ex. II. O'Halloran was copied on many of these messages. (Some of the messages, however, are innocuous, such as when the Department's benefits administrator wrote that she was "[n]ot questioning at all" a recent absence by Woods. Pl.'s Ex. NN. Some are complimentary; in one, the same employee tells O'Halloran she is "[g]lad to hear [Woods is] on duty," Pl.'s Ex. OO.) In 2010 and 2011, O'Halloran and other employees suggested that Woods retire after returning from medical leave. In May 2011, O'Halloran saw Woods stoking a fire during a training exercise, and told him, "That's a young man's job." Def.'s Ex. 3 at 462. As for Woods's disabilities on the job, O'Halloran and the Department were aware of Woods's "physical disability due to his back injuries," as well as his experience with depression. Pl.'s Mem. at 14.

On June 3, 2011, Woods had a conversation with Lieutenant Ronald Hamilton at Berwyn's South Fire Station. The parties dispute what was said. At some point after the conversation, Hamilton wrote a report, stating that during their conversation, Woods said "that at one time he wanted to kill somebody, all of them. He stated that his kids asked him for the addresses, and that they would go 'over there' and 'tune them up.'" Pl.'s Ex. P at 1. Hamilton also reported the conversation to his union and told Deputy Chief Sam Molinaro that he believed Woods had made "threats against the fire administration and/or our families." Def.'s Ex. 11 at 61. O'Halloran also learned of Hamilton's report that evening, when Dick Swade, the Department's assistant chief, called to tell him what Molinaro had heard from Hamilton. O'Halloran later called Hamilton to ask him directly about what happened. At some point that evening, O'Halloran asked the Berwyn Police Department to send officers to Woods's home to check on him, which occurred without incident. O'Halloran also ordered Woods to

3

speak to a psychologist, and he began an investigation in July 2011 into the events alleged in Hamilton's report, notifying Woods of its initiation. That inquiry included an interrogation of Woods that Molinaro conducted as well as an interview with Hamilton.

O'Halloran issued a statement of charges against Woods on July 21, 2011. The document outlined facts underlying the charges, which were: (1) conduct unbecoming a member of the Department; (2) fighting/verbal abuse; (3) false reports; (4) violation of the law. *See* Pl.'s Ex. K. Woods filed a grievance with his union on July 25, requesting an arbitration hearing on the charges, but the union declined to pursue arbitration. Instead, about a month after Woods filed his grievance, Berwyn's Board of Fire and Police Commissioners (Board) held a hearing on the charges.

The Board held an evidentiary hearing on August 23, 2011. Both Woods and the Department were represented by counsel (the Department's attorney is identified in the transcripts as counsel for O'Halloran). Both attorneys gave opening statements. The Department's attorney called five witnesses to testify: Hamilton; Greg DiMenna, a deputy chief in the Fire Department; Molinaro; Swade; and O'Halloran. Woods's attorney cross-examined each of the Department's witnesses.

At the hearing, O'Halloran testified about the contents of exhibits, his background, whether he thought prior testimony was correct, Woods's employment status prior to the June 2011 incident, what he learned on the night of the incident, and the subsequent department investigation. Specifically, he testified that he learned of the incident from Swade, who had heard about it from Molinaro, who had heard about it from Hamilton. On cross examination, Woods's counsel asked O'Halloran five questions. They concerned whether Woods had an attorney during his previous

4

disciplinary incident in 2009, how O'Halloran first heard of Hamilton's report about Woods, whether O'Halloran talked to Woods on the night of the 2011 incident, and whether O'Halloran believed Hamilton.

Woods's attorney called Woods to testify at the hearing, and the Department's attorney cross-examined him. Both sides' attorneys made objections during the hearing, which the commissioners ruled upon. Following the conclusion of the testimony, each attorney gave a closing argument. Woods also filed a "trial brief" protesting the union's handling of his grievance and preserving his due process, ADA, ADEA, and workers' compensation claims.

Following the attorneys' closing arguments, the commissioners "requested more time to go over the testimony before reaching a decision." Def.'s Ex. 1 at 271. The Board's chair, Carl Reina, explained that "there's too much at stake here to take ten minutes to say, 'Hey, this is what we're going to do,'" adding, "I think it's very, very pertinent that we take the time." *Id.* at 272.

On August 31, 2011, the Board issued a decision ordering "the removal and discharge of Lt. John M. Woods," effective that day. Compl., Ex. 3 at 1. In September 2011, Woods filed a complaint for administrative review in the Circuit Court of Cook County against Berwyn, the Board, O'Halloran, and the Board's commissioners. That court issued a decision remanding the case to the Board. Berwyn does not contend that the state court's decision has any preclusive effect on Woods's claims before this Court. Woods filed the present lawsuit in March 2012.

## Discussion

Summary judgment is appropriate if "there is no genuine dispute as to any

5

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Peele v. Burch*, 722 F.3d 956, 958 (7th Cir. 2013). Furthermore, "[t]o create a 'genuine' issue, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In examining this question, "[f]acts are viewed in the light most favorable to the nonmovants, drawing all reasonable inferences in their favor." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012).

Four of Woods's five claims against Berwyn involve allegations of discriminatory or retaliatory termination. In seeking summary judgment on these claims, Berwyn primarily argues that it had a legitimate and non-pretextual reason to terminate Woods, given the report of his alleged threats against Department personnel. But Berwyn also contends that it is entitled to summary judgment because any animus O'Halloran or other Department employees had against Woods cannot properly be imputed to the Board, which Berwyn says made the actual decision to terminate Woods.

In Woods's remaining claim, under 42 U.S.C. § 1983, he alleges that Berwyn denied him due process by terminating him without allowing arbitration of the charges against him. Berwyn responds that the collective bargaining agreement covering Woods' employment by the Department gave Woods's union, not Woods, the choice to go to arbitration.

### 1. Discrimination and retaliation claims

Woods alleges that his supervisor, O'Halloran, harbored discriminatory animus against him because he took FMLA leave, because he had a disability, because of his age, and because he applied for workers' compensation. *See, e.g.*, Pl.'s Mem. at 10 ("[T]he overwhelming weight of the evidence demonstrates that O'Halloran held retaliatory animus against Woods for claiming FMLA and worker's compensation benefits."); *id.* at 14–15 (citing beliefs of O'Halloran and defendant Hamilton that Woods had a psychological disability as basis for ADA claim); *id.* at 17–18 (citing O'Halloran's alleged comments about Woods's age as basis for age discrimination claim). Woods also points to activity by other Fire Department personnel that he argues was discriminatory. Yet Woods has sued Berwyn, not O'Halloran or any other employee, and it was the city's Board of Fire and Police Commissioners that terminated him. The Court therefore must determine whether a reasonable jury could find that the discriminatory animus Woods attributes to O'Halloran and other Department employees proximately caused the Board's termination of Woods.

Woods argues that "[a]ny knowledge of O'Halloran is imputed to the Board[,] as O'Halloran, not the Board, was the true decision-maker regarding Woods's employment termination." Pl.'s Resp. to Def.'s LR 56.1 Stat. ¶ 49. As support, Woods cites instances in which O'Halloran declared to Woods that he had management control over the Department, including firing power, and the fact that O'Halloran personally pursued the charges against Woods before the Board, which otherwise would not have considered the matter. Specifically, Woods alleges that in May 2011, O'Halloran told him, "Only I can fire you." *Id.* (citing Pl.'s Ex. B at 330–31). He also points to

7

O'Halloran's deposition, during which he testified that he could direct firefighters not to come to work.[1] Finally, Woods cites another deposition of O'Halloran in this case, in which O'Halloran testified that the Board had never rejected a disciplinary measure that the Department's management proposed.[2]

Berwyn argues that "[t]he Board did not consider Plaintiff's age, and the Board knew nothing about any of Woods' medical conditions or any claimed disabilities, Woods' leaves of absence from work or any exercise of his rights under the Family Medical Leave Act, or whether Woods had ever sought workers' compensation benefits." Def.'s Mem. at 6. It contends that the Board "was not wholly dependent upon" Chief O'Halloran for its information, as it held a full hearing and took "sworn testimony from the witnesses themselves." Def.'s Repl. at 13 (internal quotation marks omitted).

In 2011, the Supreme Court addressed the matter of a decision maker's liability for an employment action when an employee's supervisor is motivated by discriminatory animus but does not himself execute the action. (This is known as the "cat's paw" theory of liability. *See Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) (explaining the term).) The Court held "that if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment

---

[1] Woods neglects, however, to cite a quote from the same page of the document, in which O'Halloran testifies, "I can't fire anybody. The fire and police commission fire people." Pl.'s Ex. C at 141.

[2] Woods characterizes this evidence as a comment that the Board never rejected disciplinary measures that *O'Halloran* proposed, but the actual testimony refers to Department management in general. *See* Pl.'s Ex. Y at 48–49.

8

action, then the employer is liable." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) (footnote omitted). In so doing, the Supreme Court overruled a Seventh Circuit decision, in which that court had held that a decision maker could avoid liability if she is "not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009) (internal quotation marks omitted). The Supreme Court held that the mere fact of a decision maker's "independent investigation" is not enough to shield the decision maker from liability; "[w]e decline to adopt such a hard-and-fast rule," the Court said. *Staub*, 131 S. Ct. at 1193. Instead, proximate cause is the standard, which "requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Id.* at 1192 (internal quotation marks omitted). Therefore, "the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* at 1193.

The Seventh Circuit has interpreted this standard to require that plaintiffs "produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advocate Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). In *Hicks v. Forest Preserve Dist. of Cook Cnty.*, 677 F.3d 781 (7th Cir. 2012), for example, the court held that the jury properly found that a supervisor's animus could be imputed to the decision maker. *Id.* at 790. The decision maker "relied on" a series of disciplinary forms that the plaintiff's supervisor had provided in deciding to offer the plaintiff demotion or termination; the decision maker was "dependent on another

employee to supply the information" upon which the decision was based. *Id.* This evidence was sufficient to support the jury's finding that the decision maker's offer of demotion or termination was retaliation for the plaintiff's complaints against the supervisor. *Id.* Likewise, in *Staub*, the Supreme Court held that bias can be imputed to a decision maker, even if there is an independent investigation, if the decision maker "relies on facts provided by the biased supervisor," by "effectively delegat[ing] the factfinding portion of the investigation to the biased supervisor." *Staub*, 131 S. Ct. at 1193.

In this case, the parties do not dispute that it was the Board that terminated Woods's employment. They also do not dispute that the Board held an evidentiary hearing before making that decision, at which Woods was represented by counsel and was able to call and cross-examine witnesses. Woods argues that O'Halloran "was the true decisionmaker." Yet he has not produced evidence that would permit a reasonable jury to so find. As evidence that the Board's actions could have been proximately caused by O'Halloran's alleged bias, Woods cites nothing beyond O'Halloran's own statements that he possessed firing power and that the Board always approved the Department's personnel recommendations. These statements are not sufficient to create a genuine issue of fact regarding the Board's own animus, and they would likewise not permit a reasonable jury to conclude that O'Halloran's alleged bias was the proximate cause of the Board's decision.

Indeed, the O'Halloran statements Woods cites are refuted by the undisputed evidence. Two of the three Board Commissioners swore in affidavits that they considered only the charges against Woods and the evidence offered at the Board's

10

hearing; they were unaware of his medical conditions or disabilities, his leaves of absence, and his past application for workers' compensation benefits; and they did not consider his age. Woods offers nothing to contradict these statements. The Board did not consider only O'Halloran's unadorned statement; he was cross-examined by Woods's attorney, and the overwhelming majority of the hearing consisted of testimony from other persons. The hearing featured opening and closing statements from both parties and several other witnesses, including, significantly, both Hamilton and Woods, each of whom gave his version of their encounter that was the critical event underlying the charges against Woods. And each of them was subjected to cross-examination by opposing counsel. At the end of the hearing, the Commissioners asked for more time to consider the testimony before making a decision. The decision, issued a little over week later, stated that the Department had "met its burden of establishing by a preponderance of the evidence" that Woods was guilty of the charges against him. Compl., Ex. 3 at 1. Considering the content of the hearing, no reasonable jury could find that O'Halloran's alleged animus toward Woods was a proximate cause of the Board's decision.

The Court is mindful of the Supreme Court's warning in *Staub* that a decision maker's independent investigation of an employee alone is by itself insufficient to carry the day. See *Staub*, 131 S. Ct. at 1193. Even with that in mind, however, Woods has not provided evidence from which a jury reasonably could find that O'Halloran's alleged animus was the proximate cause of the termination. See *Staub*, 131 S. Ct. at 1194. And there is no evidence that the Board itself took any prohibited factor into account; at no point did the Board receive evidence or information about Woods's FMLA leave, his

age, any disability he might have had, his medical or mental condition, or his workers' compensation claims. Even if discriminatory bias prompted O'Halloran to propound the charges against Woods that prompted the Board hearing, Woods has not produced evidence that could permit a reasonable jury to conclude that O'Halloran's bias proximately caused the Board's ultimate termination of Woods.

For these reasons, Berwyn is entitled to summary judgment on Woods's claims of discrimination and retaliation.

**2.     Due process claim**

Woods contends that "[b]y terminating [his] employment without allowing him to arbitrate the charges," Berwyn denied him due process, because the collective bargaining agreement governing Woods's employment entitled him to arbitration of the dispute. Pl.'s Mem. at 21. To support his claim, Woods invokes Illinois law, which states that an "alternative or supplemental form of due process based upon impartial arbitration" is "mandatory" if it is "a term of a collective bargaining agreement." 65 ILCS 5/10-2.1-17. He contends that because Berwyn terminated him after a Board hearing, rather than after arbitration, "the City deprived [him] of his due process rights." Pl.'s Mem. at 21.

Woods's claim in this case, however, is based on the Constitution's Due Process Clause, not state law. "The Supreme Court has made clear the requirement of due process is not defined by state rules and regulations, but is an independent determination." *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007). "[T]he failure to conform with the procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process." *Martin v. Shawano-Gresham Sch. Dist.*,

295 F.3d 701, 706 (7th Cir. 2002).

The Court therefore assesses whether a reasonable jury could determine that Woods was denied due process, which as a general rule entitles a government employee who has a property interest in his job to "some form of pretermination hearing," with "notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). This pre-termination process "need not be elaborate or extensive," so "long as substantial post-deprivation process is available." *Hudson v. City of Chicago*, 374 F.3d 554, 560 (7th Cir. 2004).

In this case, the pre-termination process *was* both elaborate and extensive; it was a full-blown trial. No reasonable jury could find that the hearing that Woods received before the Board fell short of what the Constitution requires. At the hearing, Woods was represented by legal counsel; he was able to call and cross-examine witnesses; he was permitted to object to questions by opposing counsel; and his attorney gave an opening statement and a closing argument. Due process requires nothing more than this.

Assuming for present purposes that Woods had a property right in his employment as a fire lieutenant, Woods does not argue that he lacked an "opportunity to present reasons . . . why proposed action should not be taken," which the Supreme Court has termed "a fundamental due process requirement." *Loudermill*, 470 U.S. at 546. The Seventh Circuit has stated that "[f]or a pre-termination hearing to comply with due process requirements the employee must receive: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity to tell his

13

side of the story." *Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 664 (7th Cir. 2009). Woods got all of that here, and more.

Indeed, the pre-termination hearing Woods received plainly complies even with constitutional requirements for *post*-termination due process in this context. The hearing was "comprehensive," *Gilbert v. Homar*, 520 U.S. 924, 929 (1997); it was the virtual equivalent of a trial before a court.

Woods contends, without citation or elaboration, that "where the right to arbitration is a necessary component of his Due Process rights, the City can be found liable for violating the Constitution." Pl.'s Mem. at 22. This assertion is inconsistent with *Loudermill*, and it effectively converts the purported procedural requirements of state law into constitutional due process requirements, which is not the law. "State law defines property; federal law defines the process that is 'due.'" *Goros v. Cnty. Of Cook*, 489 F.3d 857, 859 (7th Cir. 2007). No reasonable jury could not find that Woods was denied due process as the federal constitution uses that term.

## Conclusion

The Court's previous decision of October 8, 2013, reported at 2013 WL 5548881, is vacated. For the foregoing reasons, the Court grants the City of Berwyn's motion for summary judgment [docket no. 68]. The case remains pending against defendant Hamilton and remains set for trial and a pretrial conference on the remaining claims as previously scheduled.

                                                                    MATTHEW F. KENNELLY
                                                                     United States District Judge

Date: November 8, 2013

14